# In the United States Court of Federal Claims

No. 07-693L and No. 07-675L
CONSOLIDATED
(Filed: September 27, 2012)

|  |  |
|---|---|
| DOROTHY L. BIERY, et al., | ) |
|  | ) |
| and | ) |
|  | ) |
| JERRAMY and ERIN PANKRATZ, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |
|  | ) |

## ORDER DENYING DEFENDANT'S MOTION TO STRIKE

Pending before the court is defendant the United States' ("the government")

motion to strike portions of plaintiffs' motion for partial summary judgment and

associated supporting materials involving settlement communications between the two

parties. The government seeks to strike any mention or inclusion of these

communications from the record under Federal Rule of Evidence ("FRE") 408, or,

alternately, under FRE 402 and FRE 403. For the reasons discussed below, the

government's motion is **DENIED**.

1

**I.      Background**

The court has already resolved the central issue of liability in this Rails to Trails Act case, finding in favor of the plaintiffs.  See Biery v. United States, 99 Fed. Cl. 565 (2011).  On September 20, 2011, the court entered an order instructing the plaintiffs to file a motion for partial summary judgment to determine the method by which to calculate attorneys' fees and costs under the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 U.S.C. § 4654(c) (2006) if the parties could not otherwise agree on the appropriate method.  See Order, Sept. 20, 2011, ECF No. 112. The purpose of this order was to separate the issue of fees and costs into two sub-issues: 1) the methodology by which to calculate attorneys' fees and costs and 2) the ultimate amount of attorneys' fees and costs due to plaintiffs' counsel.  See Joint Status Rep. at 4-6, Sept. 19, 2011, ECF No. 111.  The parties subsequently filed cross-motions for partial summary judgment and associated responses.  See Pls.' Cross-Mot. Partial Summ. J. Attorneys' Fees, ECF No. 126; Def.'s Cross-Mot. Partial Summ. J. Attorneys' Fees, ECF No. 149; Pls.' Resp., Cross-Mot. Partial Summ. J. Attorneys' Fees, ECF No. 158; Def.'s Reply, Cross-Mot. Partial Summ J. Attorneys' Fees, ECF No. 164.

In their briefs on attorneys' fees and costs, plaintiffs have included multiple references to failed settlement communications between the parties in order to illustrate what they characterize as the government's "'scorched earth' litigation strategy."  See, e.g., Pl.'s Cross-Mot. Partial Summ. J. Attorneys' Fees at 35, 37-38.  The government, in its filings under Rule 12(f) of the United States Court of Federal Claims ("RCFC"), seeks

to strike all references to these settlement communications.  <u>See</u> Def.'s Mot. to Strike, ECF No. 148; Def.'s Reply, Mot. to Strike, ECF No. 161 (citing various instances in which the plaintiffs included material related to settlement communications in various filings).  The court notes that the government, in its brief regarding the proper attorneys' fees methodology, has also included information from certain settlement communications to support its position.  <u>See</u> Def.'s Cross-Mot. Partial Summ. J. Attorneys' Fees at 20-21.

### A.    Positions of the Parties

The government relies primarily on FRE 408 as the basis for striking the plaintiffs' references to settlement communications in the plaintiffs' briefs.  FRE 408(a) bars the use of evidence related to "conduct or a statement made during compromise negotiations about the claim" to "either prove or disprove the validity or amount of a disputed claim . . . ."  Fed. R. Evid. 408(a).  FRE 408(b) provides that a court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  The rule applies to both parties.  <u>Id.</u>  The government asserts that the purposes of FRE 408 are (1) to promote the compromise and settlement of dispute and (2) to keep generally irrelevant information from coming before the court.  Def.'s Mot. to Strike at 2-3 (citing <u>inter alia</u> the advisory committee note to the 1972 proposed rule); <u>Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.</u>, 332 F.3d 976, 980 (6th Cir. 2003) (explaining the general rationale behind FRE 408).

3

Based on the language of FRE 408 and its purposes, the government argues that "in all cases, it is improper to use those communications to support a liability argument, including an argument on liability for a statutory award of attorneys' fees and costs." [1] Def.'s Mot. to Strike at 2-3. The government further argues that none of the explicit exceptions found in 408(b) apply to this case. Id. at 4.

The government argues, in the alternative, that regardless of Rule 408, the settlement communications have "no probative value" and that the inclusion of "select portions" of the communications will unfairly prejudice the government in contravention of FRE 402[2] and 403.[3] Def.'s Mot. to Strike at 5; Def.'s Reply, Mot. to Strike at 2. The government contends that because the court has bifurcated its consideration of attorneys' fees between methodology and ultimate amount, any inferences of undue delay or

---

[1] In support of this contention, the government cites Callahan v. Merrill Lynch & Co., No. 09-cv-0566, 2010 WL 3452371, at *13 (S.D. Cal. Aug. 30, 2010). In Callahan, the court indicated that it was "doubtful" that an attachment of settlement offers would be "appropriate" if the calculation of attorneys' fees were before the court. The issue of attorneys' fees, however, was not before the court and the court did not engage in an analysis under FRE 408. Callahan, 2010 WL 3452371, at *13. As such, the case is of limited relevance.

[2] The full text of FRE 402 reads:

Relevant evidence is admissible unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute;
- the rules; or
- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

[3] The full text of FRE 403 reads, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

complexity of the case that the court may draw from the settlement communications are relevant only to the final calculation of fees, an issue that is not properly before the court in determining the methodology to use in calculating hourly rates.

In response to the government's arguments based on FRE 408, the plaintiffs cite to multiple United States Circuit Courts of Appeals that have held that evidence of settlement negotiations is admissible for the purpose of determining attorneys' fees. These include the Ninth Circuit's recent decision in Ingram v. Oroudjian, where the Ninth Circuit held that the trial court, in lowering attorneys' fees, did not err in considering settlement negotiations and, in particular, an attorney's unreasonable settlement positions. 647 F.3d 925, 927 (9th Cir. 2011). The Ingram court expressly adopted the reasoning of a Third Circuit decision, Lohman v. Duryea Borough. 574 F.3d 163, 167-68 (3d Cir. 2009), cert. denied, 130 S. Ct. 3330 (2010). In Lohman, the Third Circuit expressly rejected the contention that the calculation of attorneys' fees is an issue of liability governed by FRE 408(a) and concluded that the court was allowed to consider a plaintiff's rejection of a settlement offer in determining attorneys' fees. Id. at 167-68. The plaintiffs also point to decisions in the Eighth and Seventh Circuits, Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1012 (8th Cir. 2004) (discussing the court's consideration of settlement offers in the context of Rule 68 of the Federal Rules of Civil Procedure) and Moriarty v. Svec, 233 F.3d 955, 967 (7th Cir. 2000) (finding that "[s]ubstantial settlement offers should be considered by the [trial] court as a factor in determining an award of reasonable attorney's fees" in the context of fees that are

5

incurred after the settlement offer), which, while not specifically involving FRE 408, stand for the proposition that courts may consider settlement offers in determining attorneys' fee awards. Finally, the plaintiffs note that FRE 408 includes the following statement from the Advisory Committee: "The intent is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim."

Regarding the government's "relevancy" arguments based on FRE 402 and FRE 403, the plaintiffs argue that their references to settlement negotiations are relevant for several reasons. First, they contend that the evidence from the settlement negotiations demonstrates that the plaintiffs made attempts to conduct the litigation in a cost efficient manner. Pls.' Resp., Mot. to Strike at 14. Second, they assert that the evidence of settlement discussions shows how the government's tactics greatly increased fees and expenses to the plaintiff landowners. Id. at 14-15. The rebuffed settlement negotiations, according to plaintiffs, underscore the protracted nature of this litigation and its associated costs. Id. at 2-3. The plaintiffs argue that, for these reasons, only law firms permitted to charge a "national" rate or the prevailing rate in Washington, D.C. would be willing to represent plaintiffs in this and similar Rails to Trails litigation because of the financial burden that law firms need to bear until eventual collection of fees and costs. Id. The plaintiffs thus assert that their discussion of settlement negotiations is relevant to the court's consideration of their arguments in support of a methodology favoring a "national" or Washington, D.C. rate.

**II.     The References to the Subject Matter of the Settlement Negotiations in the Parties' Briefs are not Barred by the Federal Rules of Evidence**

The court agrees with the plaintiffs that FRE 408 does not require this court to strike evidence related to the parties' settlement communications in its consideration of the calculation of attorneys' fees. The court further agrees that the evidence of settlement negotiations presented in the briefs is relevant and is not prejudicial under FRE 402 and 403.

Although the Federal Circuit has not yet ruled on this issue, the court finds, consistent with other circuits to examine the issue, that FRE 408 does not bar the consideration of settlement communications in determining appropriate attorneys' fees. See, e.g., Ingram, 647 F.3d at 927; Lohman, 574 F.3d at 167-68. By its terms, FRE 408 is a permissive rule, applying to a set of circumstances it specifically identifies, including "to prove or disprove the validity or amount of a disputed claim . . . ." Fed. R. Evid. 408(a). Thus, the court must distinguish between the use of settlement communications to resolve a claim and the use of such communications to determine other issues once the court rules on the claim's merits. As the Lohman court notes:

> [A] distinction should be drawn where evidence of the alleged settlement negotiations is not being offered to prove either liability for or invalidity of the claim or its amount. Rather, it is being offered to show that the Court's rejection of the claim should not merit an award of attorney's fees . . . .

574 F.3d at 165 (quoting EMI Catalogue P'ship v. CBS/Fox Co., No. 86-1149, 1996 WL 280813, at *2 (S.D.N.Y, May 24, 1996)) (internal quotation marks omitted). Here, the court has ruled on the merits of this case and has held that the government took the

7

plaintiffs' tracts of land. See Biery v. United States, 99 Fed. Cl. 565, 880-81 (2011).

Thus, allowing plaintiffs to use the communications here will not run afoul of FRE

408(a)'s prohibition on the use of settlement communications to establish liability.

In addition, the court finds, contrary to the government's contentions, that the list

of exceptions in FRE 408(b) is not exclusive and thus nothing in FRE 408(b) counsels in

favor of striking the plaintiffs' reference to settlement discussions.[4] The words "such as"

precede only examples of instances where FRE 408(a) does not apply and is not an

exhaustive list of all possible situations. See Fed. R. Evid. 408 advisory committee's

note to the 2006 amendments (discussing the committee's intent to preserve "extensive

case law finding Rule 408 inapplicable when compromise evidence is offered for a

purpose other than to prove the validity, invalidity, or amount of a disputed claim" in a

range of situations). Therefore, FRE 408(b) serves only to illustrate specific

circumstances in which FRE 408(a) will be inapplicable and does not limit the court's

ability to consider settlement communications in determining attorneys' fees. See Fed.

R. Evid. 408 advisory committee's note to the 2011 amendments (explaining that if

evidence is "offered for a purpose not *barred* by the rule, its admissibility remains

governed by the general principles" of the FRE (emphasis added)).

The court also finds that neither FRE 402 nor FRE 403 should bar the court's

consideration of the settlement communications discussed in the attorneys' fees briefing.

---

[4] The full text of FRE 408(b) reads, "The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

8

First, with regard to relevance under FRE 402, the court finds that the evidence provided is relevant to determining attorneys' fees. The Federal Circuit has recognized that there is a "low threshold" for determining relevancy as defined in FRE 401. OddzOn Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1406 (Fed. Cir. 1997). Under FRE 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would without the evidence" and "the fact is a consequence in determining the action." While the court recognizes the distinction the government has drawn between the methodology by which to calculate attorneys' fees on the one hand and the ultimate calculation of those fees on the other, the court does not agree that the distinction is so stark as to reject the settlement communications as irrelevant to the former under FRE 402. These communications have some relevance in supporting plaintiffs' contention that the court should adopt the prevailing Washington, D.C. rate or a "national" hourly rate when calculating the proper attorneys' fees. Pls.' Resp., Mot. to Strike at 2-3, 14-15. Specifically, the plaintiffs use the references to rebuffed settlement communications to demonstrate the "substantial burden" and prolonged nature of this litigation. Id. This, the plaintiffs argue, supports the need for higher hourly rates in order to attract attorneys willing and able to sustain the costs and associated burdens of protracted litigation. Id. Indeed, the government itself includes redacted portions of the settlement communications in its own briefing to support its proffered methodology by which to calculate attorneys' fees. See Def.'s Cross-Mot. Partial Summ. J. Attorneys' Fees at 20-21 (including information from settlement communications to support an argument that

9

the bulk of plaintiffs' work occurred in St. Louis, MO). The court finds that the settlement communications have some relevance to determining methodology and thus need not be stricken under FRE 402.

The court also agrees with plaintiffs that the communications are not so prejudicial as to warrant striking them under FRE 403. The government provides only conclusory statements that evidence of the parties' settlement negotiations would prejudice the court, without stating exactly *how* it will prejudice the court.[5] Moreover, FRE 403 is primarily intended to exclude prejudicial evidence from a jury's purview. Tome v. United States, 513 U.S. 150, 174 (1995) ("The codification, as a general matter, relies upon the trial judge's administration of Rules 401, 402, and 403 to keep . . . the prejudicial [evidence] from the *jury*.") (emphasis added). Such concerns of prejudice are not so central when the fact finder is a judge rather than a jury. Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (noting that concerns of prejudice under FRE 403 "are of lesser import in a bench trial"). Here, considering the relevance of the settlement negotiations to the issues under consideration, the court is not concerned that that

_____

[5] The court notes that the only evidence the government provides in support of its argument is a quote taken from a transcript from another case in which the court admonished the current plaintiffs' counsel not to include settlement communications in submitted briefings without prior leave of the court. Def.'s Reply, Mot. to Strike at 8 n.3 (citing Rogers v. United States, No. 07-273L, Tr. at 41, ECF No. 496 (Fed. Cl. Apr. 30, 2012)). Without further context, this court finds that the quote stands for nothing more than the general proposition that settlement communications can be prejudicial in a broad sense, and that courts reserve the authority either to allow or disallow such evidence depending on the circumstances of the particular case. The quote has little bearing on this case.

relevance will be substantially outweighed by any unsubstantiated prejudicial impact.[6]

Accordingly, the court will not strike the references to settlement negotiations in the parties' briefings under FRE 403.

## III.    Conclusion

For all of the foregoing reasons, the court finds that the references to settlement communications included in the parties' briefings are admissible under the Federal Rules of Evidence.  Defendant's motion to strike is therefore **DENIED**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone

NANCY B. FIRESTONE
Judge

---

[6] Moreover, the impact of reducing any potential prejudice by striking the evidence now is mitigated by the fact that both parties apparently agree that the references to settlement negotiations are relevant to the ultimate calculation of attorneys' fees.  It is unclear what prejudice may befall the court in the finite amount of time between now and its final consideration of attorneys' fees when that issue is properly before the court.